**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CALVIN PATTERSON, | ) | |
| | ) | |
| | ) | No. 15-cv-4139 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Hon. Amy J. St. Eve |
| | ) | |
| THE CITY OF CHICAGO, et. al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Before the Court are Plaintiff Calvin Patterson's ("Patterson") motions in limine as well as the motions in limine of Defendants the City of Chicago (the "City") and Chicago Police Department ("CPD") officers Steven Hefel ("Hefel") Michael Laurie ("Laurie") (collectively, "Defendants"). (R. 86, 87.) The Court has previously granted, based on the parties' agreement, Patterson's motions in limine numbers 1–10 and Defendants' motion in limine number 4. (R. 90, 91.) Defendants have also indicated that they do not object to Plaintiff's motions in limine numbers 11 and 22. (R. 97, Defs.' Response, 1, 14.) The Court therefore grants those two motions. With respect to the disputed motions, the Court grants in part and denies in part the parties' motions in limine for the reasons that follow.

**BACKGROUND**

**I.     Patterson's Allegations**

Patterson alleges that on August 30, 2014, Hefel and Laurie arrived at 1632 S. St. Louis Avenue in Chicago, Illinois. (R. 44, Second Am. Compl., ¶ 5.) That evening, around 7:30,

Patterson left a store near the intersection of W. 16th Street and S. Drake Avenue to walk toward his cousin's house nearby.  (*Id.* at ¶¶ 6–8.)  When he arrived at his cousin's house, he saw a police vehicle speed through a vacant parking lot.  (*Id.* at ¶ 9.)  One of the defendant officers drove the car and the other was in the passenger seat.  (*Id.* at ¶ 11.)

Patterson claims that the police car "sped down the vacant parking lot and without provocation, slammed into [Patterson's] body forcefully," throwing him to the ground and injuring him.  (*Id.* at ¶ 12.)  Before the car hit Patterson, he put his hands up "in an effort to be cooperative."  (*Id.* at ¶ 10.)  After hitting Patterson, at least one of the officers exited the car, "forcefully grabbed [Patterson], pulled him and placed him into the police vehicle."  (*Id.* at ¶ 13.)

Other officers arrived at the scene, and after conversing with Hefel and Laurie, the defendant officers drove Patterson to an alley near Drake Street and S. St. Louis Street.  (*Id.* at ¶¶ 14–15.)  One of the defendants took Patterson out of the car and "without reason or provocation, threw [him] on the ground using significant force."  (*Id.* at ¶¶ 16–17.)  When he was on the ground, at least one of the defendants kicked or hit Patterson.  (*Id.* at ¶ 17.)  As a result, Patterson suffered injuries and lost consciousness."  (*Id.* at ¶ 18.)[1]

Patterson claims that on August 30, 2014, he did not (1) obstruct, strike, assault, batter, or use force against the officers; or (2) violate a law or rule.  (*Id.* at ¶ 21.)  Patterson also alleges that he was not "the focus or subject of a criminal investigation."  (*Id.* at ¶ 23.)

Based on the above, Patterson alleges six counts against Defendants: (1) excessive force under 42 U.S.C. § 1983, (2) false arrest under § 1983, (3) false arrest under Illinois law, (4) battery under Illinois law, (5) a claim for indemnification under 745 Ill. Comp. Stat. 10/9-102 against the City should any of the individual defendants be found liable for any of the alleged

---

[1] In the Case Statement in the Joint Proposed Final Pretrial Order, Patterson does not indicate that the defendants beat him after taking him out of the police car.  (R. 88 at 2.)

counts, and (6) a claim for respondeat superior against the City for any of the state-law claims. (*Id.* at ¶¶ 27–47.)

## II.    Defendants' Response

Defendants broadly deny Patterson's allegations.  They admit, however, that either Hefel or Laurie was driving the police car to which Patterson refers, that the officer driving the vehicle exited the car at some point, that other officers arrived at the scene, that a defendant drove Patterson to the alley he references in his complaint, and that the defendant officers were acting within the scope of their employment during the relevant time.  (R. 95, Answer, ¶¶ 11, 13–15, 19.)  Defendants admit that Patterson did not obstruct, strike, or batter them, but they claim that he violated a law.  (*Id.* at ¶ 21.)[2]  Specifically, as the parties' motions in limine have made clear, Defendants claim Hefel and/or Laurie "observed Plaintiff engage in a hand-to-hand transaction the Defendants believed to be a narcotics transaction."  (R. 97 at 4; *see also* R. 87 at 15.)

In the Joint Proposed Final Pre-Trial Order, Defendants explain that Patterson "sustained his injuries by failing down a set of stairs."  (R. 88 at 2.)  They again admit to placing Patterson in the police vehicle and driving him a block away, but deny hitting Patterson with the vehicle or throwing him out of the vehicle and to the ground.  (*Id.*)

## LEGAL STANDARD

## I.    Motions in Limine

Trial courts have broad discretion in ruling on evidentiary issues before and during trial. *See Bridgeview Health Care Ctr., Ltd. v. Clark*, 816 F.3d 935, 939 (7th Cir. 2016); *Whitfield v. Int'l Truck & Engine Corp.*, 755 F.3d 438, 447 (7th Cir. 2014).  "Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials."  *Luce v. United States*, 469 U.S.

---

[2] The Answer is not clear if Defendants claim Patterson assaulted them.  (R. 95 at ¶ 21.)

38, 41 n.4 (1984); *see also Dietz v. Bouldin*, 136 S. Ct. 1885, 1891 (2016) ("The Federal Rules of Civil Procedure set out many of the specific powers of a federal district court," but "they are not all encompassing," for example, they make no provision "for the power of a judge to hear a motion *in limine*."). "Trial courts issue rulings on motions in limine to guide the parties on what evidence it will admit later in trial," and "[a]s a trial progresses, the presiding judge remains free to alter earlier rulings." *Perry v. City of Chicago*, 733 F.3d 248, 252 (7th Cir. 2013). It is well-established that a motion in limine "is an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings" and that it "permits the trial judge to eliminate from further consideration evidentiary submissions that clearly ought not be presented to the jury because they clearly would be inadmissible for any purpose." *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997).

## II.     Federal Rules of Evidence

Pursuant to Federal Rule of Evidence 401, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401; *United States v. Boros*, 668 F.3d 901, 907 (7th Cir. 2012). In short, Rule 401 defines relevance broadly. *See United States v. Boswell*, 772 F.3d 469, 475 (7th Cir. 2014). Rule 402 "provides the corollary that, with certain exceptions, '[r]elevant evidence is admissible' and '[i]rrelevant evidence is not admissible.'" *Boros*, 668 F.3d at 907. The Court, however, may exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. When considering Rule 403, courts use "a sliding scale approach: as the probative value increases, so does our tolerance of the risk of prejudice."

*Whitehead v. Bond*, 680 F.3d 919, 930 (7th Cir. 2012). "Evidence is unduly prejudicial if it creates a genuine risk that the emotions of the jury will be excited to irrational behavior, and the risk is disproportionate to the probative value of the offered evidence." *Morgan v. City of Chicago*, 822 F.3d 317, 339 (7th Cir. 2016) (citation omitted).

## ANALYSIS

### I.      Defendants' Motions in Limine

#### A.      Motion in Limine #1: Barring References to Other Civil Lawsuits, Civilian Complaints, and/or Disciplinary Histories of Any Police Personnel Who May Testify

Defendants seek to bar Plaintiff under Federal Rules of Evidence 404 and 608 from introducing testimony relating to prior instances of alleged misconduct by defendant officers or police officer witnesses. Defendants also say such evidence is irrelevant, hearsay, and inadmissible under Rule 403. As Patterson points out, Defendants do not identify any evidence in particular that they wish to bar. Without knowing what the prior incidents are that Patterson seeks to introduce, it is impossible for the Court to conduct an analysis.

Patterson, however, identifies three lawsuits[3] that he would like to introduce into evidence and/or reference in cross-examination. One is a 2007 lawsuit claiming that in February 2007, Hefel stopped and searched the plaintiff without legal justification, wrote false and misleading police reports, and battered the plaintiff by striking, kicking and/or punching him. The second is a 2008 lawsuit claiming that on June 1, 2008, Hefel stopped and battered the plaintiff. The third is a 2014 lawsuit against Hefel and Laurie claiming "on August 29, 2013, the Defendants (along with other officers) participated in a raid during which a Chicago officer held a gun to the chest of a 3-year-old, pointed a gun at an elderly plaintiff, violently shook and

---

[3] Patterson does not suggest that any of the three lawsuits resulted in any particular findings of fact or findings of liability. (R. 98 at 2–3.)

slammed another plaintiff against a wall." (R. 98 at 3.)  Based on an oddly placed footnote, the Court believes Patterson seeks to introduce proof of the third lawsuit into evidence, while he seeks only to cross-examine Hefel, Laurie, and/or other witnesses about the other two lawsuits. (*See id.* at 3 n.2.)  Because of the lack of clarity, the Court will assume that Patterson seeks to introduce proof of all three lawsuits into evidence and also seeks to cross-examine witnesses about the lawsuits under Federal Rule of Evidence 608(b).  Patterson contends that "[s]imply put, [he] should be able to argue that Defendant Hefel has a *modus operandi* and/or habit of stopping and battering persons and of falsifying police reports to allege narcotics activity."  (*Id.* at 3.) With respect to the third lawsuit, Patterson contends that because it is still pending, Defendants have a motive to lie in the current case beyond being found liable for Patterson's injuries.  (*Id.*)

Rule 608(b) provides that "[e]xcept for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness."  The Court may, however, "on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of" either the testifying witness or another witness whose character the testifying witness is testifying about.  Fed. R. Evid. 608(b).  The Seventh Circuit grants courts "great discretion" under Rule 608.  *First Webber Grp., Inc. v. Horsfall*, 738 F.3d 767, 778 (7th Cir. 2013); *see also United States v. Mandell*, No. 12 CR 842, 2014 WL 464226, at *3 (N.D. Ill. Feb. 3, 2014).  Rule 403, however, applies to the scope of cross-examination.  *First Webber*, 738 F.3d at 778; *Mandell*, 2014 WL 464226, at *3.

Under Rule 404(b), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Such evidence "may be admissible for another purpose, such as proving

motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Civ. P. 404(b)(2). "[I]t's not enough for the proponent of the other-act evidence simply to point to a purpose in the 'permitted' list and assert that the other-act evidence is relevant to it." *United States v. Gomez*, 763 F.3d 845, 856 (7th Cir. 2014) (en banc). "In other words, the rule allows the use of other-act evidence only when its admission is supported by some propensity-free chain of reasoning." *Id.*

Under Rule 406, "[e]vidence of a person's habit . . . may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice." "[B]efore a court may admit evidence of habit, the offering party must establish the degree of specificity and frequency of uniform response that ensures more than a mere 'tendency' to act in a given manner, but rather, conduct that is 'semi-automatic' in nature." *Nelson v. City of Chicago*, 810 F.3d 1061, 1073–74 (7th Cir. 2016).

Patterson is precluded from introducing the three lawsuits into evidence or from cross-examining witnesses about them. First, Patterson fails to show how these three incidents since 2008 establish the degree of specific and frequency of a uniform response to establish habit. A habit is something semi-automatic in nature—hitting the snooze button every day at the same time. Here, Patterson points to three lawsuits alleging conduct on three days over the last ten years. This is insufficient. *See id.* ("A police officer's decision to draw his gun, use handcuffs, or search a car during a traffic stop can hardly be characterized as 'habitual' or 'semi-automatic.'")

Second, evidence of any of the lawsuits is also inadmissible under Rule 404. Patterson argues that the allegations in the lawsuits show that the defendant officers have a modus operandi of "stopping and battering persons and falsifying police reports to allege narcotics

activity." (R. 98 at 3.) A litigant may in some cases use evidence of prior bad acts to show a person's modus operandi, though "any such evidence is usually offered to prove identity," which Patterson does not indicate is his intent. *Hill v. City of Chicago*, No. 06 C 6772, 2011 WL 3840336, at *3 (N.D. Ill. Aug. 30, 2011) (citing *United States v. Robinson*, 161 F.3d 463, 467 (7th Cir. 1998)). Here, Patterson's modus operandi argument is a thinly veiled attempt to do precisely what Rule 404(b) forbids: ask the jury to make an inference that because the defendants committed battery or falsified police reports in the past (which may or may not be true), they did the same thing on the day in question in this lawsuit. *Gomez*, 763 F.3d 845, 856. Moreover, the prior bad acts that Patterson raises "do not meet the high degree of similarity required to prove modus operandi." *Id.*; *United States v. Foster*, 652 F.3d 776, 785 (7th Cir. 2011). The allegations in the three lawsuits are unlike those in this case, where Patterson alleges he was intentionally hit by a police car for no reason, placed in the police car, driven a short distance, thrown out of the police car, and beaten. As for Patterson's contention that the prior cases show that Hefel has a modus operandi of falsifying police reports to allege narcotics activity, it is not apparent that Patterson alleges that Hefel did that in this case. Moreover, the prior allegations are of such a general, unspecific nature that Patterson cannot show the high degree of similarity necessary to prove modus operandi.[4]

Finally, Patterson also is precluded from introducing evidence of or questioning witnesses about the three lawsuits under Rule 403, as such questioning is minimally probative but carries an unacceptable risk of unfair prejudice, jury confusion, and undue delay.[5] First, any

---

[4] With respect to the third lawsuit, even if Patterson could introduce evidence of the lawsuit to show the defendant officers' motive to lie, this evidence is inadmissible under Rule 403 for the reasons described in the following paragraph.

[5] The Court notes that even if evidence of the three lawsuits were admissible under Rules 404 or 406, the Court would exclude it under Rule 403.

reference to the three lawsuits has a significant potential to mislead the jury into attempting to decide those cases. Additionally, it could lead to distracting and time consuming mini-trials regarding the merits of these other allegations. *See Hill*, 2011 WL 3840336, at *11. Second, the three lawsuits are minimally probative. The allegations have not been proven, two of the incidents happened nearly 10 years ago, one of the incidents happened in August 2013, and none of the incidents involves conduct significantly like the conduct alleged in the current case. Furthermore, the allegations in the three lawsuits—particularly the third case—are inflammatory and carry a high likelihood that the jury will draw conclusions based on improper considerations. *See Gomez*, 763 F.3d at 857. Finally, even if the currently pending third lawsuit creates an extra motive for the defendant officers to lie, it does so minimally, as they already have such a motive based on the allegations in this case.

Accordingly, the Court grants Defendants' motion to the extent it addresses the three lawsuits Patterson identifies.

**B.    Motion in Limine #2: Barring References to the City Indemnifying Defendants for Any Compensatory Damages**

Defendants seek to bar references that the City may indemnify any defendant officers for compensatory damages. *See* 745 Ill. Comp. Stat 10/9-102 (providing that the City indemnify employees for compensatory damages); 745 Ill. Stat. 10/2-302 ("It is hereby declared to be the public policy of this State, however, that no local public entity may elect to indemnify an employee for any portion of a judgment representing an award of punitive or exemplary damages."); *Winston v. O'Brien*, 773 F.3d 809, 814 (7th Cir. 2014) ("[I]ndemnification of punitive damages is prohibited under Illinois law.") In general, courts bar evidence of indemnification because it may encourage juries to inflate compensatory damages awards. *See Hill v. City of Chicago*, No. 06 C 6772, 2011 WL 3205304, at *4 (N.D. Ill. July 28, 2011) (citing

*Lawson v. Trowbridge*, 153 F.3d 368, 379 (7th Cir. 1998)).  Patterson may, however, introduce evidence of the City's indemnification if Defendants "open[] the door by presenting evidence of their financial condition" with respect to punitive damages.  *Id.*; *see also Gonzalez*, 2015 WL 3671641, at *7 ("[I]f Defendants plead poverty as to punitive damages, they open the door for Plaintiff to offer evidence of indemnification as to compensatory damages.").

Defendants also request that the Court bar Plaintiff from referencing defense counsel as "City lawyers" or "The City," or similar terms.  Patterson agrees not to do this.  Patterson says, however, that while he does not anticipate that he will need to refer to the City to prosecute his claims, he asks leave of the court to do so if necessary.  If Patterson wishes to refer to the City for some reason, he must front the issue with the Court outside the presence of the jury.  The Court notes, however, that it will not strike the City from the case caption.  *See Jones v. City of Chicago*, No. 14-cv-4023, 2017 WL 413613, at *6 (N.D. Ill. Jan. 31, 2017); *Bruce v. City of Chicago*, No. 09 C 4837, 2011 WL 3471074, at *4 (N.D. Ill. July 29, 2011); *Wilbon v. Povanich*, No. 12 C 1132, 2016 WL 890671, at *3 (N.D. Ill. Mar. 9, 2016).

### C.    Motion in Limine #3: Barring Arguments that the Jury Should "Send a Message" to the City with its Verdict or Punish the City

Defendants argue that the Court must bar Patterson from arguing that jurors should send a message or punish the City with its verdict.  Plaintiff cannot recover punitive damages from the City.  *See Obrycka v. City of Chicago*, No. 07 C 2372, 2012 WL 4060293, at *2 (N.D. Ill. Sept. 14, 2012); *Betts v. City of Chicago*, 784 F. Supp. 2d 1020, 1032–33 (N.D. Ill. 2011).  Patterson therefore may not argue that jurors should send a message to the City or punish the City.  *See Martinez v. City of Chicago*, No. 14-cv-369, 2016 WL 3538823, at *14 (N.D. Ill. June 29, 2016).  This prohibition also applies to referencing sending a message or punishing the Chicago Police Department, as "[i]nvoking the department is tantamount to invoking the city itself."  *Id.*

Patterson, may, however, argue that punitive damages can serve as an example to other officers "that they should not do *what Defendants did in this case*." *Id.* (emphasis in original). Patterson may ask the jury to send a message to the defendant officers or other police officers generally to deter the type of misconduct Patterson alleges here. *Id.* at *15; *see also Jones*, 2017 WL 413613, at *5.

The Court therefore grants Defendants' motion with the caveat described in the preceding paragraph.

**D.      Motion in Limine #5: barring References to Officers Lying, Conspiring, Covering Up, or Maintaining a Code of Silence**

Defendants seek to bar Patterson from offering evidence or argument that police officers generally lie, conspire, cover up, or maintain a "code of silence" or "blue wall."  Patterson agrees not to use the words "code of silence" or "blue wall," but seeks to attack the officers' bias based upon group membership "in the same way any party may argue the bias of any witness in relationship to a plaintiff or defendant."  (R. 98 at 5 (quoting *Betts v. City of Chicago*, 784 F. Supp. 2d 1020, 1033 (N.D. Ill. 2011)).)  Patterson is correct that he may argue that the officers involved in this case are biased toward one another based on common group membership and loyalty to one another.  *See Ratliff v. City of Chicago*, No. 10 C 739, 2012 WL 58485551, at *4 (N.D. Ill. Nov. 19, 2012); *see also Jones*, 2017 WL 413613, at *3.

**E.      Motion in Limine #6: Barring References to Investigations**

Defendants seek to bar Patterson from introducing evidence or making arguments regarding investigations by the Independent Police Review Authority ("IPRA") or the CPD. Defendants do not indicate what evidence specifically they seek to bar.  Patterson represents that he "does not wish to introduce any evidence of the results and conclusions of [an investigation regarding the incident involved in this case], but [Patterson] should be allowed to use documents

and statements of Defendant and witnesses . . . for impeachment and/or refreshing recollection."
(R. 98 at 6.)  Courts have excluded evidence "that there was an investigation, the reasons for
undertaking the investigation, or the findings and recommendations of IPRA" or similar
investigative bodies.  *See Bruce*, 2011 WL 3471074, at *6.  Statements made during an
investigation, however, may be admissible as party opponent admissions under Federal Rule of
Evidence 801(d)(2)(A) or used for impeachment purposes.  *See id.*  The parties, however, must
not refer to the IPRA or the fact of an internal investigation when raising such statements.  *See
Martinez*, 2016 WL 3538823, at *12; *Bruce*, 2011 WL 3471074, at *6.  The Court therefore
grants Defendants' motion in part and denies it in part.

Defendants also seek to bar Patterson from "arguing or eliciting testimony that the City of
Chicago improperly trains, disciplines, monitors or controls police officers."  (R. 86 at 9.)
Patterson indicates that he "has no objection in so far as Plaintiff will not seek to demonstrate
that a failure to train or a *Monell* theory gave rise to a constitutional deprivation that the Plaintiff
sustained."  (R. 98 at 7.)  Based on these representations, there appears to be no dispute between
the parties.  Accordingly, the Court grants Defendants' motion to the extent the parties agree.

### F.    Motion in Limine #7: Barring Implication or Testimony that CPD Personnel Are Being Paid by the City to Appear in Court and Testify

Defendants seek to bar any reference to the City paying CPD personnel to testify at trial.
Patterson argues that "[t]o the extent that any CPD personnel are being paid more than the
normal wage to testify, Plaintiff should be entitled to elicit and argue that evidence to show
bias."  (R. 98 at 6.)  Patterson is correct.  *See Jones*, 2017 WL 413613, at *5; *Martinez*, 2016 WL
3538823, at *15; *Torres v. City of Chicago*, No. 12 C 7844, 2015 WL 12843889, at *10 (N.D.
Ill. Oct. 28, 2015).  The Court therefore grants in part and denies in part Defendants' motion.

### G.    Motion in Limine #8: Barring References to Any Violations of Police Department Rules, Policies, Regulations, and General Orders

Defendants seek to bar any reference regarding violations of police department rules and regulations, contending that they are not relevant "on the issue of whether Defendants Officers' conduct was willful and wanton, and their admission would unfairly prejudice and confuse the jury on the appropriate standard of liability." (R. 86 at 10.)  Patterson represents that he "will not seek to demonstrate that the violation of a general order gives rise to constitutional liability." (R. 98 at 6.)  He contends, however, that "it may be necessary to refer to a general order for the purpose of establishing proper policy (not policy that establishes liability but policy with regard to procedure)." (*Id.*)  Patterson says, for example, that the "rules might require that a police report or criminal complaint be drafted in a particular fashion." (*Id.*)

As far as the Court can tell, the parties appear to be in agreement.  The Court therefore grants Defendants' motion to the extent the parties agree.  "It is well-settled that violations of the Chicago Police Department Rules and Regulations cannot establish proof that a defendant violated a plaintiff's constitutional rights." *Hill v. City of Chicago*, No. 06 C 6772, 2011 WL 3205304, at *3 (N.D. Ill. July 28, 2011) (citing *Thompson v. City of Chicago*, 472 F.3d 444, 454–55 (7th Cir. 2006)).  Moreover, evidence that a police officer violated a police department rule is highly prejudicial and distracting in a § 1983 case. *See Jones*, 2017 WL 413613, at *3–4.  If Patterson wishes to refer to a CPD rule or regulation at trial for some reason other than showing a violation of such a rule, he must front the issue with the Court outside the presence of the jury.

### H.    Motion in Limine #9: Barring Testimony, Argument, or Innuendo of Racial Motivation

Defendants seek to bar any argument or testimony suggesting that the defendant officers' alleged misconduct was racially motivated.  Patterson "agrees that there is no evidence of racial

motivation on the part of either Defendant (or other witness[es])," and therefore agrees with Defendants' motion. (R. 98 at 7.) The Court therefore grants Defendants' motion. Patterson asks, however, that should evidence arise during trial of any racial motivation behind Defendants' alleged actions, that the Court revisit this ruling. The Court grants Patterson's request, as motion in limine rulings are provisional. *Perry*, 733 F.3d at 252.

## I.      Motion in Limine #10: Allowing Use of Patterson's Prior Convictions

Defendants seek to impeach Patterson with evidence of three prior felony convictions under Federal Rule of Evidence 609(a)(1)(A). (R. 86 at 12.) Under Federal Rule of Evidence 609(a)(1)(A), when a party wishes to attack a witness's character for truthfulness, evidence of a conviction for a crime punishable by imprisonment for more than a year "must be admitted, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant." If, however, "10 years have passed since the witness's conviction or release from confinement, whichever is later," the evidence of the conviction is only admissible, if, among other things, "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b)(1).

Defendants point to three prior convictions that they would like to reference: (1) a 2013 conviction for attempted possession of a stolen vehicle, which resulted in a three-year sentence; (2) a 2011 conviction for Aggravated Unlawful Use of a Weapon, which resulted in a three-year sentence, and (3) a 2007 conviction for manufacturing, delivering, or being in possession of a narcotic or controlled substance, which resulted in a three-year sentence. (R. 86 at 12–13.) Patterson agrees that all three of these convictions fall within the scope of Rule 609(a)(1)(A). (R. 87 at 14–15.) Thus, the Court must consider whether Rule 403 precludes impeachment with any conviction.

In criminal cases, the Seventh Circuit has identified five considerations for weighing probative value against prejudicial effect: "(1) the impeachment value of the prior crime; (2) the point in time of the conviction and the defendant's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue." *United States v. Montgomery,* 390 F.3d 1013, 1015 (7th Cir. 2004) (citing *United States v. Mahone,* 537 F.2d 922, 929 (7th Cir. 1976); *Smith v. Nurse*, No. 14-cv-5514, 2016 WL 4539698, at *3 (N.D. Ill. Aug. 31, 2016); *Buchanan v. McCann*, No. 08 C 7063, 2012 WL 1987917, at *1 (N.D. Ill. June 4, 2012); *Hill v. City of Chicago*, No. 06 C 6772, 2011 WL 2637214, at *1 (N.D. Ill. June 6, 2011). "While not all of those factors will apply in civil cases, the same general concerns may illuminate the court's analysis." *Buchanan*, 2012 WL 1987917, at *1. Courts have broad discretion under Rule 403. *Anderson v. City of Chicago*, No. 09 C 2311, 2010 WL 4928875, at *1 (N.D. Ill. Nov. 30, 2010) (citing *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002)). They should take care, however, "to ensure that a civil rights plaintiff's criminal past is not being used to unfairly prejudice him or her." *Id.* (quoting *Gora v. Costa*, 971 F.2d 1325, 1331 (7th Cir. 1992)).

With respect to the first factor, Patterson's two oldest convictions—for unlawful use of a weapon and for manufacturing, delivering, or being in possession of a narcotic or controlled substance—have little do with truthfulness. *See Buchanan*, 2012 WL 1987917, at *1 (explaining that the first factor weighed in the plaintiff's favor in a § 1983 case because "[m]urder does not implicate truthfulness"); *see also United States v. Galati*, 230 F.3d 254, 261 n.5 (7th Cir. 2000) ("A person's past drug possession does not necessarily implicate dishonesty and this court has rejected the argument that 'people who have used drugs are more likely to tell lies.'" (quoting *United States v. Neely*, 980 F.2d 1074, 1081 (7th Cir. 1992))). Thus, for those two crimes, the

first factor weighs in Patterson's favor. With respect to the most recent crime—attempted possession of a stolen vehicle—while it is "not a crime of dishonesty per se, . . . it is more probative of dishonesty than other crimes, like murder or assault." *Barber v. City of Chicago*, 725 F.3d 702, 715 (7th Cir. 2013); *see also McGill ex rel. McGill v. Menard, Inc.*, No. 11 C 4950, 2013 WL 5253650, at *5 (N.D. Ill. Sept. 17, 2013); *Cartwright v. City of Chicago*, No. 09 CV 4298, 2013 WL 3984434, at *5 (N.D. Ill. Aug. 2, 2013); *United States v. Evans*, 09 CR 152, 2010 WL 2104171, at *4 (N.D. Ill. May 25, 2010). Accordingly, for the most recent crime, the first factor weighs in Defendants' favor.

The second factor weighs slightly in Patterson's favor, as the most recent crime took place five years before trial, the second most recent crime took place more than six years before trial, and the oldest crime took place nearly ten years ago. (R. 87, at 14–16.) None of these is particularly recent, but the convictions also are no older than the ten-year period that can trigger Rule 609(b).

The third factor weighs in Patterson's favor with respect to his drug conviction. The more similar a past crime is to a witness's alleged criminal activity in the current case, the greater the probability for unfair prejudice based on jurors making an unwarranted propensity inference. *See Jones*, 2017 WL 413613, at *10 (citing *United States v. Montgomery*, 390 F.3d 1013, 1016 (7th Cir. 2004), and *United States v. Hernandez*, 106 F.3d 737, 740 (7th Cir. 1997)). Here, Defendants will argue that Hefel and Laurie witnessed Patterson "engage in a hand-to-hand transaction that [they] believed to be a narcotics transaction." (R. 97 at 4.) To introduce a prior narcotics-related conviction creates a dangerous probability that the jury will improperly conclude Patterson must have engaged in a drug transaction before the incident in question in this case.

With respect to Patterson's other two convictions, the third factor weighs in Defendants' favor. *See id.* The other two convictions are not drug-related, and therefore do not raise the same propensity-inference concern.

The final two factors weigh decidedly in Defendants' favor. Patterson's testimony is critical to his case and his credibility is crucial to jurors weighing the strength of his testimony. *See United States v. Grant*, 396 F.3d 906, 910 (7th Cir. 2005) (noting the importance of credibility when one party-witness's testimony contradictions the testimony of a witness supporting the opposing party's version of events).

Weighing the factors together, the Court concludes that Defendants may impeach Patterson with evidence of the three convictions referenced above. For the older two crimes, however, the Court concludes that "sanitization"—that is, barring Defendants from referencing nature of the crimes—is appropriate given the potential unfair prejudice that can arise from a jury learning that Patterson has a drug conviction and a weapons conviction and the limited probative value of those two convictions, as the crimes are not especially indicative of truthfulness. *See Smith v. Nurse*, No. 14-cv-5514, 2016 WL 4539698, at *4 (N.D. Ill. Aug. 31, 2016) (sanitizing the plaintiff's criminal record and allowing Defendant to introduce only the fact that the plaintiff is a convicted felon); *Pierce v. Ruiz*, No. 13 CV 6824, 2016 WL 5912890, at *3 (N.D. Ill. Oct. 11, 2016). The Seventh Circuit has recognized that "evidence that a witness has used illegal drugs may so prejudice the jury that it will excessively discount [his] testimony," *Jones v. Walters*, No. 12-cv-5283, 2016 WL 1756908, at *4 (N.D. Ill. Apr. 29, 2016) (quoting *Galati*, 230 F.3d at 262), and a weapons conviction may imply violent behavior or inflame the jury over its concern regarding dangerous weapons in the community (a particularly acute concern in this district). Moreover, the drug conviction is similar to the criminal activity in

which Defendants allege Patterson engaged in this case, further increasing the risk of unfair prejudice. The most recent crime, however, does not carry the same potential of inflaming the jury's passions. Thus, Defendants may disclose the crime of conviction.[6]

Patterson argues that the Court should limit the number of convictions Defendants may introduce. Having already engaged in the relevant analysis under Rules 609 and 403, the Court declines to limit the number of convictions Defendants may introduce simply because there are multiple convictions. The Court has rejected this "piling on" argument in the past. *See Hill*, 2011 WL 2637214, at *2. Indeed, because the logic behind Rule 609 is "that a person who has flouted society's most fundamental norms, as embodied in its felony statutes, is less likely than other members of society to be deterred from lying under oath in a trial by the solemnity of the oath, the (miniscule) danger of prosecution for perjury, or internalized ethical norms against lying," *Cartwright*, 2013 WL 3984434, at *1 (quoting *Campbell v. Greer*, 831 F.2d 700, 707 (7th Cir. 1987)), it is quite relevant under the rule's rationale that Patterson has "flouted society's . . . norms" three times in the past ten years rather than one.[7]

In sum, the Court grants in large part Defendants' motion under Rule 609. Defendants may use evidence of the three prior convictions to impeach Patterson. Defendants may not, however, refer to the crimes of conviction for the two oldest convictions. Otherwise, they may submit evidence of the crimes charged (for the most recent crime), the date, and the disposition. *See Hill*, 2011 WL 2637214, at *2; *see also Pierce*, 2016 WL 5912890, at *3.

---

[6] The Court notes that this ruling is subject to change if Defendants suggest that Patterson was engaged in some sort of theft crime near the time of the incident in question.

[7] Defendants also wish to introduce evidence of the three convictions as substantive evidence under Rule 404(b) because they supposedly "explain Plaintiff's motivation for fleeing from Defendant Officers." (R. 86 at 13.) The Court does not understand Defendants' logic based on its bare submissions. Accordingly, the Court denies Defendants' motion without prejudice to the extent it deals with Rule 404(b).

**J.      Motion in Limine #11: Barring Patterson from Requesting that Defendants Produce Information and Documents in the Jury's Presence or from Implying that Defendants Have Not Complied with Any Discovery Requests**

In response to this motion in limine, Patterson represents that he "does not anticipate making such [a] request or argument," and, should the need to do so arise, Patterson agrees to raise the issue outside the presence of the jury.  (R. 98 at 9.)  As there is currently no dispute, the Court grants Defendants' motion.

**K.      Motion in Limine #12: Barring Jamal Johnson, April Tucker, Randy Abraham, and Jeremy Wilson from Testifying**

Defendants seek to bar Patterson from calling the above-listed witnesses at trial because, although Patterson listed each of these witnesses on his Federal Rule of Civil Procedure 26 disclosures, Defendants were unable to contact any of the witnesses.  For Jamal Johnson, Patterson disclosed him "as being able to be contacted through [Patterson]."  Defendants say they could not contact Johnson for a deposition.  For April Tucker, Patterson provided a phone number for her.  Defendants complain that they were unable to contact her or find an address for her, and Patterson did not provide any updated information for her.  For Randy Abraham, Patterson provided a phone number and P.O Box.  Defendants represent that they could not contact him based on this information and Patterson did not provide additional contact information after Defendants explained their unsuccessful attempts to contact Abraham.  Finally, for Jeremy Wilson, Patterson provided a phone number and date Wilson would be present for his deposition.  Wilson did not appear for the deposition and Defendants were unable to contact him.

The Court requires more information before resolving Defendants' motion with respect to Tucker and Abraham.  The parties should be prepared to address this portion of the motion at the final pre-trial conference.  In particular, the parties should be prepared to specify what efforts they have made to contact these two witnesses.  With respect to Wilson and Johnson, the Court

grants Defendants' motion. Patterson does not dispute that he represented that Defendants could contact Johnson through Patterson, and Patterson provided a date Wilson would appear for a deposition. Wilson failed to show for his deposition as confirmed by Patterson. In addition, Patterson does not dispute that he failed to contact Johnson for Defendants. Furthermore, the Court notes that if Patterson plans on calling these witnesses, presumably he has accurate contact information and could have made the witnesses available to Defendants.

## II.     Patterson's Motions in Limine

### A.     Motion in Limine #12: Barring Evidence or Argument of an Apology

Patterson seeks to bar Defendants from apologizing for Patterson's injury without admitting liability. Defendants represent that they do not anticipate making any apologies on the witness stand. They argue, however, that the Court should not grant this motion at this time because "curtail[ing] a party from framing its presentation of the case down to the level of expressions of any feelings of empathy is overly rigid and the motion should therefore be denied." (R. 97 at 1.) The Court agrees with Defendants. Without knowing the context in which Defendants could potentially express empathy toward Patterson, the Court cannot make a reasoned decision. Accordingly, the Court denies this motion without prejudice.

### B.     Motion in Limine #13: Barring References or Evidence of Patterson's Prior Arrests, Criminal Involvement, Convictions, and Incarcerations

Defendants seek to bar any evidence of or references to the following: (1) convictions that occurred before 2007 where the period of incarceration also ended before 2007, (2) any arrests that did not lead to convictions, (3) arrests or convictions related to drugs, and (4) the three convictions discussed above with respect to Defendants' motion in limine number 10. Defendants seek only to reference or introduce evidence of the three convictions discussed in their motion in limine number 10. Accordingly, the Court grants Patterson's motion without

objection to these uncontested areas.  As to contested matters, the Court's ruling with respect to Defendants' motion in limine number 10 controls.  Patterson's motion is therefore granted in part and denied in part.

### C. Motion in Limine #14: Barring Allegations of Drug/Alcohol Use by Patterson or Any Other Witness

Patterson, citing relevance, Rule 403 and Rule 404, seeks to exclude any evidence, testimony, or argument regarding "[p]re-occurrence and/or post-occurrence" allegations or convictions relating to drug or alcohol use by Patterson, any of Patterson's witnesses, or any of Patterson's relatives and acquaintances.  (R. 87 at 16.)  Defendants argue that it is critical to their defense to "testify that they observed Plaintiff engage in a hand-to-hand transaction the Defendants believed to be a narcotics transaction."  (R. 97 at 3-4.)  The Court agrees with Defendants.  Defendants' observations of Patterson and the incident in question are central to their defense in this case.  Defendants also argue that they "will testify as to why they were searching for narcotics along the route Plaintiff used to flee from them."  (*Id.* at 4.)  Because the relevance of this evidence is unclear, the Court will address it at the final pretrial conference. Finally, Defendants contend that they should be able to elicit testimony about "allegations of use or possession pertaining to Plaintiff's witnesses . . . relating to any drug or alcohol use or possession on the day in question."  (*Id.*)  The Court agrees.  If any witnesses used any drugs or consumed any alcohol near the time of the events in question, Defendants are free to cross-examine on this topic because it is directly relevant to the witness's ability to testify about the events.

Defendants do not appear to challenge Patterson's motion with respect to allegations of drug and alcohol use unrelated to the incident in question. The Court therefore grants Patterson's motion to the extent of the parties' agreement.[8]

### D.  Motion in Limine #15: Barring Evidence of Collateral Payments of Medical Expenses

Patterson seeks to bar Defendant from referring to insurance payments or other collateral source of payments for Patterson's medical bills. Defendants "agree that the source of payments for Plaintiff's medical expenses is generally inadmissible under the collateral source rule." (R. 97 at 4.) Defendants argue, however, that Patterson cannot "claim expenses beyond what [he] actually paid to satisfy [his] medical expenses." (*Id.*) Patterson has made no indication that he will attempt to claim damages for the full listed price of medical bills even when insurance covered a portion of the cost. In the event Patterson attempts to do this, Defendants should raise the issue with the Court outside the jury's presence. Accordingly, the Court grants Patterson's motion, subject to the evidence of damages he presents.

### E.  Motion in Limine #16: Introducing Evidence of Indemnification if Defendants Introduce Evidence of Their Financial Position

Patterson seeks to introduce evidence of the City's indemnification of the individual defendants if the individual defendants introduce evidence or make arguments regarding their personal financial situation. Defendants concede that Patterson "is generally correct that courts have held that if a defendant seeks to argue that [his] financial condition makes [him] unable to pay punitive damages that it may open the door to discuss indemnification." (R. 97 at 5.) Defendants contend, however, that if Defendants offer evidence of their financial damages, "it would suffice to have a limiting instruction that jurors may only consider Defendants' financial

---

[8] With respect to Patterson's drug conviction discussed above, the Court's ruling on Defendants' motion in limine number 10 controls.

condition in connection with [their] ability to pay punitive damages." The common practice of courts in this district is that evidence of indemnification is inadmissible unless the defendant opens the door by injecting his personal financial circumstances into the case. *See, e.g.*, *Holmes v. City of Chicago*, No. 09-cv-2481, 2016 WL 6442117, at *12 (N.D. Ill. Nov. 1, 2016); *Gonzalez v. Olson*, No. 11 C 8356, 2015 WL 3671641, at *7 (N.D. June 12, 2015); *Betts v. City of Chicago*, 784 F. Supp. 2d 1020, 1030-31 (N.D. Ill. 2011). The Court agrees with this practice. In the event the parties introduce evidence of financial condition and indemnification, they may request appropriate limiting instructions.

**F.    Motion in Limine # 17: Barring Argument of the Purported "Financial Gain" Motive for Litigation**

Patterson seeks to bar Defendants from arguing something to the effect of "all the plaintiff wants is money." He cites no authority in support of his argument. Defendants may argue that Patterson is lying because there is a pecuniary motivation to do so. *See Lugo-Villalobos v. City of Chicago*, No. 13-cv-5716, Dkt. 61 (N.D. Ill. Jan. 30, 2015) (concluding that Defendants "may argue that financial gain is a possible motivation for [the plaintiff's] suit"); *Smith v. Altman*, No. 12-cv-4546, Dkt. No. 142 at 3–4 (N.D. Ill. Sept. 24, 2014) (denying a similar motion because motions in limine generally relate to evidence rather than argument and a financial motive is relevant to bias and a motive to lie); *Viramontes v. City of Chicago*, No. 13 C 6251, Dkt. No. 68 at 2 (N.D. Ill. Aug. 12, 2014) (denying a similar motion "because arguing bias is always permissible"). Any cross examination or argument along these lines goes directly to Patterson's motive and is proper. Furthermore, it is hardly controversial that plaintiffs may have a financial motivation to file a lawsuit and that this motivation could cause them to lie.

Patterson further argues that if Defendants are allowed to argue that "Plaintiff's underlying motivation for bringing this civil lawsuit is to obtain money, then Plaintiff should be

allowed to further establish that the underlying motivations for the Defendants is to lie on the stand so as to prevent further investigation into their actions."  Once again, Patterson cites no authority.  Patterson—and Defendants—may cross-examine witnesses regarding their bias and motivation to lie.  Patterson may also make arguments to the jury based on that cross-examination.  He may not, however, introduce evidence of unrelated collateral matters—such as *United States v. Burge*, as Patterson requests—because such evidence is irrelevant, unduly prejudicial, distracting to the jury, and would result in unwarranted time-waste.

Accordingly, Patterson's motion is denied.

**G.    Motion in Limine #18: Barring Testimony and Argument that the Neighborhood Where the Incident Occurred is a "High Crime Area"**

Patterson seeks to bar Defendants and their witnesses from "referring to the neighborhood where the incident in question occurred as a 'high crime area,' 'drug area,' 'gang area, or other similar irrelevant and prejudicial characterizations of the area."  (R. 87 at 23.) Presence in a high-crime area can constitute a relevant factor supporting probable cause under the governing totality-of-the-circumstances test.  *See Huff v. Reichert*, 744 F.3d 999, 1008 (7th Cir. 2014); *Whitehead v. Bond*, 680 F.3d 919, 931–32 (7th Cir. 2012); *United States v. Brown*, 188 F.3d 860, 865 (7th Cir. 1999) (discussing the similar, though less-demanding standard for reasonable suspicion for a *Terry* stop); *Betts v. City of Chicago*, 784 F. Supp. 2d 1020, 1023–24 (N.D. Ill. 2011).  "For the high-crime-area factor to carry weight in a probable cause determination," however, "there should be 'a reasonable connection between the neighborhood's higher crime rate and the facts relied upon to support probable cause.'"  *Huff*, 744 F.3d at 1007– 08 (quoting *Whitehead*, 680 F.3d at 932).  Given that presence in a "high-crime area" can support probable cause, courts—including this one—have permitted defendants in § 1983 cases to elicit testimony regarding whether a particular area was known as a high-crime area.  *See, e.g.*,

*Daniels v. City of Chicago*, No. 08-cv-6832, Dkt. No. 203 at 2 (N.D. Ill. Jan. 10, 2013); *Ratliff*, 2012 WL 5845551, at *7; *Betts*, 784 F. Supp. 2d at 1023–24; *Bruce*, 2011 WL 3471074, at *11; *Anderson v. City of Chicago*, No. 09-cv-2311, Dkt. No. 117 at 2–3 (N.D. Ill. Mar. 09, 2011).

Defendants, however, must take care to "lay a proper foundation to testify about [their observation that the area in which they encountered Patterson], such as their personal experience of working or patrolling the area in question." *Daniels*, Dkt. No. 203 at 2 (citing *Whitehead*, 680 F.3d at 932). Additionally, to limit the risk of unfair prejudice, Defendants must not belabor their point and should avoid "resorting to sweeping generalizations." *Ratliff*, 2012 WL 5845551, at *7. As Judge Dow helpfully explained, Defendants should not use potentially prejudicial terminology like "'high crime area' to describe the location where Plaintiff was arrested, but may describe why they were in the area (*e.g.*, to investigate narcotics activity) to the extent that the evidence supports this testimony." *Id.*

Patterson's motion is therefore granted in part and denied in part.

## H.      Motion in Limine #19: Barring Witness Officers from Wearing Uniforms and Medals

Defendants agree that no police or firemen witnesses will wear medals at trial. (R. 97 at 9.) They object, however, to Patterson's motion to bar witnesses from wearing uniforms. The Court agrees with Defendants. Courts have permitted police officers to wear their uniforms in the past, and the Court is hesitant to force officers to change clothes when they are on duty the day of the trial. *See Wilbon*, 2016 WL 890671, at *9; *Altman v. Helgessen*, No. 10 C 5619, Dkt. No. at 2 (N.D. Ill. May 28, 2014); *Case v. Town of Cicero,* No. 10 C 7392, 2013 WL 5645780, at * 4 (N.D. Ill. Oct. 16, 2013); *Tolliver v. Gonzalez*, No. 10 C 1879, 2011 WL 5169428, at *1 (N.D. Ill. Oct. 31, 2011). The Court further notes that it will hardly be a secret that police-officer witnesses are police officers. A standard uniform without medals will not prejudice Patterson.

Patterson's motion is granted to the extent of the parties' agreement. Otherwise, the Court denies the motion.

I.       **Motion in Limine #20: Barring Defense Counsel from In-Court Demonstrations**

Patterson seeks to bar defense counsel from "staging in-court demonstrations in which a defense attorney performs roles, particularly with one or more of the Defendants as his/her fellow player." The Court denies this motion without prejudice. The Court trusts that the parties will conduct themselves in a professional manner, and it will address any objections regarding "demonstrations" during the course of the trial.

J.       **Motion in Limine #21: Barring Evidence, Argument, or Insinuation that Patterson Has a Burden to Prove Motive and to Preclude Evidence or Argument Regarding Defendant Officers' Intent or Motive**

Patterson argues that the Court should preclude Defendants from arguing that "Plaintiff cannot prove what motive Defendants would have had to hit Plaintiff with a vehicle and/or otherwise batter Plaintiff." (R. 87 at 27.) Patterson goes on to argue that "Defendants should be precluded and/or barred from making the argument or procuring testimony regarding the Defendant Officers motive or intent in their actions towards Plaintiff," and that "[n]either motive nor intent are elements in Plaintiff's excessive force or failure to intervene claims." (*Id.* at 28.)

The Court denies Patterson's motion. While Defendants cannot argue that Patterson must prove motive as an element of a tort where it is not an element, motive is relevant in this case. To prove his battery claim, for example, Patterson must show at least one defendant acted "intending to cause a harmful or offensive contact with [Patterson]," and also that the harmful contact "directly or indirectly result[ed]." *Colyer v. City of Chicago*, No. 12 C 4855, 2014 WL 8796112 (N.D. Ill. Dec. 8, 2014) (citing *Flores v. Santiago*, 986 N.E.2d 1216, 1219 (App. Ct. Ill. 2013)). Motive is relevant to the question of whether Defendant acted with the requisite intent to

26

cause a harmful or offensive contact. Moreover, it is relevant to whether any contact occurred at all. In addition, Defendants' motives are also relevant to punitive damages. In a § 1983 case, a jury may award punitive damages "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Case*, 2013 WL 5645780, at *5 (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). Patterson's motion is denied.

### K. Motion in Limine #23: Barring Evidence, Argument, or Insinuation that Defendants Had Legal Justification to Use Force Against Plaintiff

Patterson seeks to bar Defendants from suggesting that they used legally justified force against him. (R. 87 at 29.) Patterson further contends that Defendants have not proffered any evidence that they had a legal justification to use force against him. (*Id.*) Defendants argue that the Court should deny Patterson's motion because it is overly broad. Defendants represent that their depositions show that they used "some type of contact or 'force,'" like helping Patterson off the ground, performing a pat-down, and placing Patterson in a police vehicle. (R. 97 at 14–15.) The Court agrees with Defendants that Patterson's motion is overbroad. Defendants should be able to testify regarding the events that transpired. Patterson is free to object as needed.

### L. Motion in Limine #24: Barring Evidence Regarding Witnesses' Criminal Histories

Patterson represents that Defendants failed to tender any criminal histories for any person disclosed in the parties' Rule 26(a) disclosures other than Patterson. Because of this, Patterson contends the Court should preclude Defendants under Federal Rule of Civil Procedure 37 from offering evidence or eliciting testimony regarding the criminal histories of any witnesses called at trial (other than, presumably, Patterson). (*Id.*) Defendants believe one witness named Tina McBride may have a conviction for aggravated battery to a peace officer. (R. 97 at 15.)

Defendants contend that they cannot determine if McBride has a conviction because "the conviction contains a different spelling and requires further investigation. (*Id.*) The Court denies Patterson's motion without prejudice, but Defendants should be prepared to explain at the final pretrial conference what efforts they have taken to determine if McBride has a criminal conviction and the relevant details of that conviction.

Defendants also note that the witnesses discussed in Defendants' motion in limine number 12 (Johnson, Tucker, Abraham, and Wilson) may have convictions but Defendants have been unable to depose them or obtain the necessary information to determine if they have criminal records. Defendants therefore ask that the Court deny Patterson's motion with respect to these witnesses. The Court agrees, and will deny the motion with respect to these witnesses without prejudice.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the parties' motions in limine.

DATED: February 28, 2017                          ENTERED



AMY J. ST. EVE
U.S. District Court Judge